| | |
|---|---|
| Cynthia L. Pollick, LLM<br>I.D. No.: 83826<br>363 Laurel Street<br>Pittston, PA 18640<br>(570) 654-9675 | Attorney for Plaintiff |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT D. MICHALESKO | : | |
| | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION – LAW |
| | : | |
| -v- | : | JURY TRIAL DEMANDED |
| | : | |
| FREELAND BOROUGH, et al. | : | |
| | : | |
| Defendants | : | NO.   13-2634 |

**PLAINTIFF'S BRIEF IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

"Defendant's Motion to Dismiss … is another example of what *Twombly* and *Iqbal* have wrought—a compulsion to file a motion to dismiss in every case." *Meyer v. Snyders Lance, Inc.*, 2012 U.S. Dist. LEXIS 175537, at *1-*3, *1 (M.D. Ga. Dec. 12, 2012). "… [M]any lawyers (and judges) have interpreted the Supreme Court's decisions in *Twombly* and *Iqbal* as ushering in a new era for motions practice in federal court. From this Court's perspective and experience, *Twombly* has become the most overused tool in the litigator's tool box." *Meyer*, 2012 U.S. Dist. LEXIS 175537, at *2.

1

**STATEMENT OF THE FACTS**

Plaintiff worked for Defendant Freeland Borough for 12 years prior to being wrongfully suspended without pay and without notice, and ultimately fired. During those 12 years, Plaintiff had not one disciplinary action in his file.

Plaintiff got injured on the job in the nature of a broken wrist, two broken elbows, bruised ribs and injury to his facial area on Aug 12, 2011, when he was arresting a criminal. On or about August 13, 2011, Plaintiff requested Heart & Lung benefits due to his work-related injuries. On or about September 6, 2011, Plaintiff, acting as Bargaining Committee Chairman for the union, informed Defendants of the union's intent to proceed with binding interest arbitration.

On or about December 14, 2011, Dr. Feinstein released Plaintiff to return to work "… in a capacity over the next two to three weeks of gradual transition in which initially he will do his regular duty job, but be cognizant of the potential irritating effects and overuse. Over the next two to three weeks he will continue to recondition himself while at work in terms of his job activities, and in three weeks from now there will be no restrictions whatsoever." On or about December 22, 2011, Plaintiff received notice that Plaintiff was being suspended for no wrong-doing. Thereafter, Plaintiff experienced an acute stress reaction with anxiety distress due to the

situation. Instead of understanding that Plaintiff had an emotional moment due to Defendants' actions, Defendants refused to allow Plaintiff to return to work and made defamatory comments about his confidential medical emotional condition. Defendants fired Plaintiff on February 6, 2012. Defendants admit that they fired Plaintiff because of an alleged mental infirmity. However, Plaintiff does not have such mental infirmity and was cleared to return to work by a Psychiatrist. Dr. Jesse opined that "[d]uring my assessment, Scott did not present any psychiatric issues or symptoms, which would preclude him for employment." Consequently, Defendants regarded him as disabled since they fired him for a mental issue that he did not have.

On or about January 4, 2012, Defendants sent a letter to Plaintiff informing him that he had been suspended without pay effective the day before, January 3, 2012. Before being suspended without pay, Plaintiff was not given notice of the charges against him, explanation of the evidence against him, or an opportunity to rebut such allegations, which are all required before Defendants could suspend an employee without pay.

Defendants started a campaign of harassment against Plaintiff in retaliation for him having exercised his right of association and free speech by engaging in union business. Although Plaintiff was recovering from his on-job injuries stemming from his encounter with a criminal in August

2011 and had not been released to return to work by any physician, on or about December 6, 2011, Defendants advised that they believed he was recovered and they were going to terminate his Heart & Lung benefits. Defendants engaged in a campaign of harassment by suspending Plaintiff without pay and without due process, disparaging Plaintiff by claiming that he was able to return to work when his physician had not released him, pressuring Plaintiff into returning to work when he was not released by his physician, making false allegations of criminal wrongdoing, and terminating Plaintiff on February 6, 2012.

Defendants denied Plaintiff his unemployment compensation claim after terminating him.  The Unemployment compensation office awarded benefits to Plaintiff since he did not engage in wilful misconduct. Defendants appealed the award of unemployment compensation to Plaintiff. Defendants were not successful at the Board level, and appealed once more to the Commonwealth Court.  The award of unemployment compensation was upheld at all levels.  Plaintiff filed a grievance over his termination, and on 3/19/13, the arbitrator sustained the grievance and ordered reinstatement and back pay, etc...  Defendants have refused to honor that arbitration award.

**DISCUSSION OF THE LAW**

**POINT ONE**
**Plaintiff Michalesko alleged facts that**
**support all cause of actions**

Contrary to Defendants' one paragraph argument, Plaintiff has stated facts sufficient to establish claims on all counts. As for the procedural due process claim[1], Plaintiff alleged he had a property interest in his job, and could not be suspended without just cause through statute and Collective Bargaining Agreement (Doc. 6, pp. 20-21). Consequently, Plaintiff stated all facts necessary to support a due process claim. 53 P.S. § 46190; *See Dee v. Borough of Dunmore*, 549 F.3d 225 (3d Cir. 2008).

As for First Amendment Retaliation, he alleged that he engaged in protected speech – union activity and association – and suffered as a result of the same through timing and retaliatory animus, which is all that is necessary for a First Amendment claim. As for the state Pennsylvania Human Relations Act disability claim, Plaintiff again stated all that was necessary for liability against the Borough and the individuals. Defendants admitted that they fired Plaintiff because of a mental condition (Doc. 6, pp. 31-37). Each individual Defendant voted to terminate Plaintiff. (See Exhibit "A", Plaintiff's termination letter. Consequently, there is no question that the individual Defendants were aiding and abetting the Borough when they

---

[1] Plaintiff has not alleged nor is seeking a substantive due process claim. It is well evident that case law precludes such claim for public employees.

made the intentional decision to fire Plaintiff because of an alleged mental infirmity that he does not suffer from.

Further, Plaintiff does not have to plead evidence. As Judge Easterbrook of the 7th Circuit just recently noted that as long as allegations are "… plausible—and no more is required of a pleading." *Richards v. Mitcheff*, 696 F.3d 635 (7th Cir. 2012). Judge Easterbrook emphasized that ".. a judge cannot reject a complaint's plausible allegations by calling them 'unpersuasive.' Only a trier of fact can do that, after a trial." *Id.* Judge Easterbrook stated "[n]either Twombly nor Iqbal has changed the rule that judges must not make findings of act at the pleading stage (or for that matter the summary-judgment stage". *Id.*  Reversing the district court's dismissal of a 1983 on a motion to dismiss, Judge Easterbrook noted "[a] complaint that invokes a recognized legal theory (as this one does) and contains plausible allegations on the material issues (as this one does) cannot be dismissed under Rule 12." *Id.*

**POINT TWO**[2]
**Defendants' defense of "extraordinary situation" is disputed since Defendants cannot show that Plaintiff was indicted for a crime**

Defendants' inappropriately attach non-public documents to their motion to dismiss to support one of their defenses to this lawsuit. On a motion to dismiss, the court cannot decide Defendants' defenses since the court solely looks to Plaintiff's allegations within the Complaint. As Judge Easterbrook noted, "[j]udges should respect the norm that complaints need not anticipate or meet potential affirmative defenses." *Richards v. Mitcheff*, 696 F.3d 635 (7th Cir. 2012). Consequently, Defendants' request to dismiss this action based on a disputed defense is inappropriate.

To counter Defendants' inappropriately attaching exhibits to their motion, Plaintiff attaches the Arbitrator's decision on Plaintiff's termination, which clearly shows the existence of disputed factual issues. (See Exhibit "B", Attorney Arbitrator Ralph Colfesh, Jr.'s 3/19/13 Decision and Order). Contrary to Defendants' recitation of the facts, the Arbitrator, Attorney Ralph Colfesh, Jr., concluded otherwise and sustained Plaintiff's grievance. Attorney Arbitrator Colfesh ordered Plaintiff's reinstatement back in March of this year, and to which Defendants have refused to obey. A jury, just like Arbitrator Attorney Ralph Colfesh, Jr., could conclude that Defendants did

---

[2] Defendants point to a prior hearing; but that hearing was not dealing with the decision of the Borough to suspend Plaintiff based on the alleged "mental disability".

not have 'just cause' and the circumstances did not create such an 'extraordinary situation' that required Defendants to disregard Plaintiff's constitutional due process rights of providing notice, explanation of the evidence against Plaintiff, and an opportunity to tell Plaintiff's side of the story before depriving Plaintiff.

Defendants' defense of 'extraordinary situation" cannot be decided as a matter of law when viewing Plaintiff's evidence in the light most favorable to him since a juror could hold the view of Attorney Ralph Colfesh, Jr., who heard from all the witnesses and basically concluded, without directly stating, that Defendants cannot discriminate against an employee because they believe they have a mental condition.

Property interest in not being suspended without just cause is created by state law, rather than the Constitution. *Dee v. Borough of Dunmore*, 549 F.3d 225, 229-30 (3d Cir. 2008). "The hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982). The Pennsylvania statute states that "[n]o person employed in any police ... force of any borough shall be suspended without pay, removed or reduced in rank" unless any of the limited seven circumstances is present. 53 PA. STAT. ANN. § 46190 (2012). However, none of the seven exceptions applies in this instant case and thus, Defendants violated

Plaintiff's Fourteenth Amendment Due Process right.

Similar to this case, the *Dee* case dealt with a firefighter who was suspended and defamed without notice and pre-suspension hearing. *Dee*, 549 F.3d at 227-28. The Borough Council approved the plaintiff's suspension based on an erroneous finding that he failed to satisfy a training requirement. *Id.* at 228. A hearing was to be held eight days thereafter. *Id.* The plaintiff was neither present at the vote nor was he aware that his personnel file was under review. *Id.* The plaintiff learned for the first time of the charges against him when the suspension decision was already made. *Id.* The district court granted summary judgment to the defendants reasoning that the plaintiff did not have a property interest cognizable under the Fourteenth Amendment. *Id.* at 228. The Third Circuit reversed reasoning that the clear language of 53 Pa. Stat. § 46190 created for the plaintiff the property interest in not being suspended without just cause. *Id.* at 232.

As in *Dee*, Plaintiff Michalesko demonstrated that he is entitled to Fourteenth Amendment protection. The Pennsylvania statute involved in *Dee* is the same here. In addition, none of the just cause enumerated in the statute applies in this case. Plaintiff has been employed as a police officer for Defendant Freeland Borough for almost 12 years with no disciplinary actions in his file. Defendants do not dispute this. Also as the plaintiff in

9

*Dee*, Plaintiff neither attended the voting nor was he aware that he was subject to suspension without pay. In fact, Plaintiff first learned that he was suspended when Defendants sent a letter to Plaintiff after the vote on the suspension was completed (See Exhibit "C", Suspension Letter dated 1/4/2012). As the plaintiff in *Dee*, Plaintiff Michalesko had a property interest in not being suspended without just cause triggering his Fourteenth Amendment right.

      As Justice White stated: "The essential requirement of due process … are notice **and** an **opportunity to respond**. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (emphasis added). The parties do not dispute that Plaintiff was not provided with a pre-suspension hearing in which Plaintiff could respond. Defendants, however, argue that in the instant case, a pre-suspension hearing was not necessary because public employers can postpone a person's opportunity to be heard until after a deprivation has taken place. However, the U.S. Supreme Court in *Gilbert v. Homar* merely held that no pre-suspension hearing is necessary if there is probable cause to believe that a public employee committed a crime. 520 U.S. 924, 934 (1997); *see also In Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230 (1988) (holding that a pre-suspension hearing was not necessary

where a grand jury had indicted plaintiff); *Barry v. Barchi*, 443 U.S. 55 (1979) (holding that a pre-deprivation opportunity was not constitutionally required where a trainer drugged his horses before a harness race).

The most recent due process case in our Circuit, *Schmidt v. Creedon*, supports this contention. 639 F.3d 587 (3d Cir. 2011). The Third Circuit clarified that in cases of a suspension without pay, 53 Pa. Stat. § 46190, requires a pre-suspension hearing even if it is brief and informal. *Id.* at 596 (reaffirming the proposition in *Dee* that "policemen cannot be suspended without pay unless there has been a pre-suspension hearing."). Although the outcome in *Creedon* was that the defendants were entitled to qualified immunity, the Circuit stressed that this ruling was based only because this "right was not clearly established at the time of [the plaintiff's] suspension." *Creedon*, 639 F.3d at 598.

The case involved a patrol officer who was suspended without pay for filing a complaint on behalf of another officer against superior officers. *Id.* at 590-91. The plaintiff was given a notice of his suspension but no pre-suspension hearing was held. *Id.* at 591-92. The district court held that because a post-suspension hearing took place, no pre-suspension hearing was necessary despite the plaintiff's property interest in his position. *Id.* at 593-95. The Third Circuit rejected the district court's holding that no pre-

suspension hearing was necessary. *Id.* at 597. The Circuit expressly distinguished the case with *Gilbert*. *Id.* at 596. In *Gilbert*, there was probable cause that the employee committed a serious crime and thus, there was adequate assurance without a pre-suspension hearing that the employer's decision to suspend was unwarranted. *Id.* However, the plaintiff in *Creedon* was merely accused of wrongdoing and thus, no such assurance existed. *Id.* Moreover, the Third Circuit elaborated that a pre-suspension hearing would not impose a significant administrative burden on the state. *Id.* at 596. Thus, absent of any extraordinary circumstances, the plaintiff had a right to pre-suspension hearing. *Id.* at 597.

In the instant case, unlike *Creedon*, it is now established law that an employee is entitled to a pre-suspension hearing in which he can respond to the allegations on which a potential suspension is based. Here, Plaintiff neither committed a crime nor was he charged with any wrongdoing that would have justified Defendants to suspend him without a pre-suspension hearing. This case falls squarely within the Third Circuit rule that "when an individual is not provided with any form of pre-deprivation process ... the risk of an erroneous deprivation of his constitutionally protected interest -- i.e., the second factor of the *Mathews* balancing – is heightened considerably." *Dee*, 549 F.3d at 232 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Thus, the lack of any probable cause that Plaintiff committed a

crime diminishes the assurance that Defendants' decision to suspend Plaintiff without a pre-suspension was not baseless.

Defendants argue that extraordinary circumstances existed in this case justifying their decision because Plaintiff posed a safety risk to the public and fellow officers. However, Defendants' contention is misplaced. Defendants relied on an incident report filed by Officer Williams without further investigation. Rather, Defendants jumped to the conclusion that Plaintiff would pose a safety risk. Plaintiff sought medical treatment, but was not hospitalized, and he was even allowed to go home that night (See Exhibit "B"). In such a circumstance, a pre-suspension hearing was neither impracticable nor impossible. There was no burden placed on Defendants to allow Plaintiff to respond and present evidence that would have rebutted the decision to suspend.

### POINT THREE
### No post-deprivation remedy can excuse Defendants' failure to hold a pre-suspension hearing

The Fourteenth Amendment requires an opportunity to respond "at a meaningful time and in a meaningful manner." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Our Circuit more particularly held that no post-deprivation remedy can excuse the failure of a governmental entity to hold a pre-suspension hearing. *Stana v. Sch. Dist.*, 775 F.2d 122 (3d Cir. 1985).

13

In *Stana*, the plaintiff applied for a position with defendant school district. *Id.* at 124. Although she was one of the top two names on the list of applicants, the defendant removed her from the list based on a bad referral and without notice to the plaintiff. *Id.* The plaintiff filed a § 1983 complaint alleging that the defendant violated her due process right protected by the Fourteenth Amendment. *Id.* at 125. The district court relied on prior cases and ruled in favor of the defendant reasoning that there is no violation of due process as long as the "state provides a forum within which redress may be had." *Id.* Our Circuit rejected the district court's interpretation based on the Supreme Court's ruling in *Loudermill*. *Id.* at 129. The Court stated:

> [A] pretermination hearing was neither impracticable nor impossible. Thus, even if Pennsylvania had a procedure that might have provided [the plaintiff] some redress, an issue which the parties dispute, that does **not diminish** the nature of deprivation, which was the denial of procedural due process to [the plaintiff] at a meaningful time before her name was effectively removed from the list. *Id.* (emphasis added).

In this case, as discussed supra, a pre-suspension hearing was neither impracticable nor impossible. Moreover, the need for a quick action by the state was not present in this case that would have justified Defendants' failure to hold a pre-suspension hearing. As our Circuit made clear that, contrary to Defendants' contention, a post-suspension in this circumstance cannot **diminish** the denial of procedural due process to

14

Plaintiff. Labeling a post-suspension hearing a pre-disciplinary hearing would not mitigate such a denial.

## POINT FOUR
**Plaintiff has stated what lack of training caused the deprivation, which is all that is necessary to assert the legal theory of failure to train**

Plaintiff has alleged specifically that Defendants failed to train their borough officials on constitutional rights of due process and First Amendment retaliation (Doc. 6 pp 11). Through discovery, Plaintiff will confirm that Defendants have provided no training to Defendants. Consequently, that failure to train Defendants caused Plaintiff's constitutional harm. Plaintiff is not required to plead anything further in order to assert the legal theory of failure to train. In this case, there is no dispute that Defendants as Borough Council voted both to suspended Plaintiff without due process and fire him, which undoubtedly represents official policy. (See Exhibit "A", "C").

As the Supreme Court has noted "[*m*]*onell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' – that is, acts which the municipality has officially sanctioned." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). "No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body – whether or not that body had taken similar action in the past or intended to do so in the

15

future – because even a single decision by such a body unquestionably constitutes an act of official government policy." *Pembaur*, 475 U.S. at 480. Consequently, Plaintiff has sustained his burden of pleading.

**POINT FIVE**
**Plaintiff has specifically identified**
**the Defendants as individuals**

Defendants ignore Plaintiffs' Amended Complaint, which specifically lists each Borough Council member as an individual (See Doc. 6). They are not listed in their official capacity; therefore, there is no allegation for this court to decipher because Plaintiff has listed each Defendant as "Individually" and not "Individually and in their Official Capacity."

**POINT SIX**
**The individual Defendants are not entitled to qualified immunity**
**since pre-suspension due process and First amendment retaliation**
**rights have been in existence for sometime**

Defendants' claim that pre-suspension due process rights were not known at the time of events. However, the cases of *Dee* and *Schmidt* show otherwise. *Dee v. Borough of Dunmore*, 549 F.3d 225 (3d Cir. 2008); *Schmidt v. Creedon*, 639 F.3d 587 (3d Cir. 2011). The *Dee* decision was decided in 2008, and the *Schmidt* case was decided in March of 2011. The events at issue here occurred some 9 months later in January 2012. Consequently, there is absolutely no way Defendants were not appraised of their requirements prior to the events at issue since First Amendment Retaliation rights and due process rights were clearly established by Third

Circuit case law at the time of these events. *Suppan v. Dadonna*, 203 F.3d 228 (3d Cir. 2000).

## POINT SEVEN
### There is no public record that proves Plaintiff was unqualified for protection under the ADAAA and PHRA

Defendants argue that this Court should take the argument by their lawyer at a hearing as the truth that Plaintiff was allegedly "unqualified" within the meaning of the ADAAA and PHRA. However, no such public document exists that determined Plaintiff was pursuant to the ADAAA and PHRA unqualified, and on a motion to dismiss Defendants should not be referring to documents, especially lawyer argument at a hearing for support, but rather pointing out where Plaintiff's pleading is alleged to be defective. Here, there is no question Plaintiff stated he was qualified to work since Plaintiff stated in his Complaint, "Dr. Jesse opined that "[d]uring my assessment, Scott did not present any psychiatric issues or symptoms, which would preclude him for employment." (Doc. 6 pp. 34). Consequently, at the time of the alleged actions, Plaintiff was qualified to work and protected by the ADAAA and PHRA.

## POINT EIGHT
### Punitive damages are appropriate

The Supreme Court has held that "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of

punitive damages." *Smith v. Wade*, 461 U.S. 30, 51 (1983). Here, Defendants were reckless and callous since they will admit to knowing that you cannot retaliate against an employee who exercises his free speech/association and that you must provide an employee with due process. Defendants fail to cite to any case law showing Plaintiff does not have the right to plead punitive damages in a case similar to this. Consequently, Plaintiffs will be able to sustain a claim for punitive damages.

### POINT NINE
**Alternatively, if this Court finds Plaintiff's Complaint as alleged is defective, Plaintiff seeks permission to amend to cure any such defects**

Although Plaintiff believes he has stated all facts that are necessary to establish his claim, if this Court finds otherwise, Plaintiff requests permission to be allowed to amend his Complaint to cure any such defects. *Rhodes v. Diamond*, 433 Fed. Appx. 78 (3d Cir. 2011).

### CONCLUSION

For the preceding reasons, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss.

    Respectfully Submitted:

    s/ Cynthia L. Pollick
    Cynthia L Pollick, Esquire

**CERTIFICATE OF WORD COUNT**

Cynthia L Pollick, Esquire, hereby certifies that the foregoing Brief contains 3,997words in compliance with the Local Rules.

**CERTIFICATE OF SERVICE**

Cynthia L Pollick, Esquire, hereby certifies that on December 17, 2013, she served a copy of Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss on Defendants by serving a copy via electronically on Defendants:

> Mr. John P. Morgenstern, Esquire
> Ms. May Mon Post, Esquire
> 1601 Market Street, Suite 3400
> Philadelphia, PA 19103

s/ Cynthia L. Pollick
Cynthia L Pollick, Esquire
