## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT D. MICHALESKO | : | JURY TRIAL DEMANDED |
| Plaintiff | : | |
| *v.* | : | |
| FREELAND BOROUGH, and | : | |
| ROBERT QUINN, Individually | : | |
| JOHN BUDDA, Individually | : | |
| JOHN POTOSKIE, Individually | : | |
| RICK WENNER, Individually | : | |
| BARBARA TULANOWSKI, Individually | : | |
| JOSEPH PALKO, JR. | : | |
| DANIEL BOBBY, Individually | : | NO.: 3:13-CV-02634 |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## AMENDED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants Freeland Borough (the "Borough"), and Councilmen Robert Quinn, John Budda, John Potoskie, Rick Wenner, Barbara Tulanowski, Joseph Palko, Jr. and Daniel Bobby (hereinafter the "Council Defendants"), by and through their undersigned attorneys, submit this Reply Brief in Support of their Amended Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6).

## I.     ARGUMENT

### A.     Plaintiff Fails to State a Plausible Claim for Procedural Due Process Violation in Count I of his Amended Complaint.

Plaintiff alleges in his Response to Defendants' Motion that the procedures available to him were inadequate and therefore violated his procedural due process rights.   Specifically, Plaintiff claims that he was

suspended without notice or a pre-suspension hearing.   Plaintiff alleges that a pre-suspension hearing should have been offered because Plaintiff neither committed a crime nor was he charged with any wrongdoing.   To support his argument, Plaintiff cites *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) and *Schmidt v. Creedon*, 639 F.3d 587 (3d Cir. 2011).

In *Loudermill*, the Supreme Court held that a public employee terminable only for cause was entitled to a very limited pre-termination hearing, to be followed by a more elaborate post-termination hearing. Loudermill, 470 U.S. 532.   Plaintiff's reliance on *Loudermill* is misplaced. Indeed, in *Loudermill* the Court confronted a dismissal, as opposed to a suspension.   In holding that some pre-termination notice and opportunity to be heard was required, it was relevant to the *Loudermill* Court that no hazard or emergency existed that would have heightened the governmental interest in immediate termination without a hearing.

It is curious that Plaintiff cites *Schmidt* to support his contention that an informal opportunity to be heard prior to suspension without pay was required by due process.   Plaintiff's reliance on *Schmidt* is misplace because in that case, the Third Circuit concluded that "***absent extraordinary circumstances***," an informal opportunity to be heard prior

to suspension without pay was required by due process." *Schmidt*, 639 F.3d at 596. Despite Plaintiff's inference that "extraordinary circumstances" must somehow apply only to situations where a plaintiff committed a crime, the Supreme Court in *Gilbert v. Homar*, 520 U.S. 924, 117 S. Ct. 1807, 138 L. Ed. 2d 120 (1997), only addressed the question due process violation by examining the following three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.'" *Gilbert*, 520 U.S. at 931-32 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

In the instant case, "extraordinary circumstances" clearly existed prior to the Plaintiff's suspension. Specifically, after the Borough was informed that Plaintiff had put a gun to his head and threatened to commit suicide, the Borough's interest in protecting the public safety—and, indeed, the safety of Plaintiff, who would have access to his service firearm—created an extraordinary circumstance. *See Smith v. Borough of Dunmore*, 516 Fed. Appx. 194, 200 (3d Cir. 2013) (finding absence of a pre-deprivation hearing was justified where the government had concerns of public safety or negative press in connection with a firefighter's delinquency in required

Fire Academy Training).   Further, it bears emphasis that contrary to Plaintiff's claims, he **was** informed at the time of his suspension of the grounds for the suspension and possible termination pending the outcome of the suspension/removal hearing and that he **was** presented with an opportunity to refute the charges at the hearing.   *See*   Exhibit "C," previously attached to Defendants' Motion to Dismiss, at Bates Stamped No. BOROUGH 0045. While the suspension/removal hearing did not take place until after Plaintiff was already placed on suspension, it is undisputed that the suspension/removal hearing did take place shortly after Plaintiff was placed on suspension.   See also, *Gilbert*, 520 U.S. at 932 (the employee's private interest in a temporary suspension without pay was "relatively insubstantial," as long as the employee received a sufficiently prompt post-suspension hearing).   For the foregoing reasons, the Borough's interest justified its immediate suspension of Plaintiff prior to giving him an opportunity to refute the charges.

**B.     Plaintiff Concedes That He Did Not State a Cause of Action for Substantive Due Process Violation in Count I of His Amended Complaint.**

Plaintiff concedes in his Response to Defendants' Motion to Dismiss that the due process claim raised in his Amended Complaint is a claim for procedural due process, rather than substantive due process.   In light of

the foregoing, it is clear that the issue of substantive due process violation is not before the Court.

**C.     Plaintiff's Amended Complaint Fails To State A _Monell_ Claim Against The Freeland Borough Under The Failure To Train Theory.**

In his Response, Plaintiff alleges that "through discovery, Plaintiff will confirm that Defendants have provided no training to Defendants" and "consequently, that failure to train Defendants caused Plaintiff's constitutional harm." Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).   Although this pleading standard does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." _Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009) (citing _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 555 (2007)).   A pleading that offers nothing more than "labels and conclusions[,] . . . a formulaic recitation of the elements of a cause of action . . . [or] naked assertion[s] devoid of 'further factual enhancement'" does not meet this standard and should be dismissed. _Id._ (citing _Twombly_, 550 U.S. at 557).   To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Twombly*, 550 U.S. at 556 (retiring the "no set of facts" test of *Conley*

*v. Gibson,* 355 U.S. 41 (1957)); *see also Phillips v. Allegheny*, 515 F.3d

224, 232-33 (3d Cir. 2008).

To apply the *Twombly/Iqbal* standard, the Third Circuit has directed

district courts to engage in a two-step inquiry to determine the sufficiency of

the facts alleged. *Id.* at 130.   First, the court must identify and disregard

allegations that are nothing more than legal conclusions and, therefore,

"not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.   As both

*Twombly* and *Iqbal* made clear, a court need not consider allegations in the

complaint that constitute unsupported legal conclusions, legal conclusions

couched as factual allegations, or conclusory factual allegations devoid of

any reference to actual events.   *See Twombly*, 550 U.S. at 556 (explaining

that "on a motion to dismiss, courts 'are not bound to accept as true a legal

conclusion couched as a factual allegation'")(quoting *Papsan v. Allain*, 478

U.S. 265, 286 (1986)).   "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Iqbal*,

556 U.S. at 678.

Second, the court must then identify the non-conclusory, well-pleaded

factual allegations, "assume their veracity and then determine whether they

plausibly give rise to an entitlement of relief." *Id.* at 679.   To be plausible,

the complaint must show more than a mere possibility of misconduct. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

The Supreme Court has been clear that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).   Municipal liability can only be established when the action complained of executes or implements a policy or decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy. *Monell*, 436 U.S. at 690-691; *see also McMillian v. Monroe County*, 520 U.S. 781, 784, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997).   Furthermore, "[p]roof only of the existence of an unlawful policy or custom is not sufficient … to impose municipal liability under section 1983.   A plaintiff also must establish that the government policy or custom was the proximate cause of the injuries sustained." *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996) (*citation omitted*). Additionally, a claim under 42 U.S.C. § 1983 cannot be based on a theory of *respondeat superior*, whether such claim is brought against a local government, or such claim is brought against an individual.   *Monell vs. Department of Social Services of the City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Hampton v. Holmesburg Prison*

*Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976); *Rode v. Dellarciprete*, 845 F.2d. 1195, 1207 (3d Cir. 1988).

Based on the foregoing, it is clear that to the extent that Plaintiff's Amended Complaint is based on a "failure to train" theory, it must fail because Plaintiff  makes only a bald, conclusory allegation that the Borough failed to train its officials.  Further, Plaintiff cannot simply claim "through discovery, Plaintiff will confirm that Defendants have provided no training to Defendants" in order to survive a Motion to Dismiss.

D.    **Plaintiff Concedes That He Did Not Bring Claims Against the Council Defendants in their Official Capacities.**

Plaintiff concedes in his Response to Defendants' Motion to Dismiss that he brought claims against the Council Defendants only in their individual capacities.  In light of the foregoing, it is clear that there are no claims against public officials in their official capacity.

E.    **The Council Defendants Sued In Their Individual Capacities Must Be Dismissed Under the ADA Because There Is No Individual Liability Under the ADA.**

The Third Circuit has held that Congress did not intend to hold individual employees personally liable under Title VII.  *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077-78 (3d Cir. 1996), *cert. denied*, 521 U.S. 1129, 138 L. Ed. 2d 1031, 117 S. Ct. 2532 (1997).  The Third Circuit also has held that "the ADA, ADEA, and Title VII all serve the

same purpose—to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well." *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 157 (3d Cir. 1995) (noting that the allocations of the burdens of proof and persuasion under the ADA are informed by the ADEA and Title VII). It follows, therefore, that the availability of individual liability should be the same under any of the three statutes. *See Metzgar v. Lehigh Valley Hous. Auth.*, 1999 U.S. Dist. LEXIS 11908, Civ. No. 98-3304, 1999 WL 562756, *3 (E.D. Pa. 1999) (quoting *Meara v. Bennett*, 27 F. Supp. 2d 288, 290 (D. Mass. 1998)) ("It makes sense, therefore, to treat the issue of individual liability the same under the ADA and Title VII."). Because there is no individual liability under Title VII, it must follow necessarily that there is no individual liability under the ADA.

**F.    The Council Defendants Sued In Their Individual Capacities Must Be Dismissed Under the PHRA Because Plaintiff's Bold Assertion That Council Defendants Aided And Abetted The Borough In the Discrimination/Retaliation Of The Plaintiff Is Merely A Conclusory Statement.**

The PHRA specifically provides for individual liability in limited circumstances where employees "aid, abet, incite, compel or coerce the doing of any act declared by the section to be un unlawful discriminatory

practice." 43 P.S. § 955(e).  Her e, Plaintiff boldly asserts, without any factual allegations, that Council Defendants aided and abetted the Borough in the discrimination/retaliation of the Plaintiff simply because "each individual Defendant voted to terminate Plaintiff."  Plaintiff further claims, "Plaintiff does not have to plead evidence."

Defendants refer this Honorable Court to paragraph C above, wherein Defendants put forth the *Iqbal/Twombly* argument, as Plaintiff does not specify how the Council Defendants allegedly aided and abetted the Borough but merely gives a conclusory statement that they have done so when they voted to terminate Plaintiff from employment.

### G. To The Extent That Plaintiff Alleges A Conspiracy Claim Against Council Defendants In Their Aiding And Abetting, This Claim is Barred By The Intra-Corporate Conspiracy Doctrine.

To the extent that Plaintiff is alleging a conspiracy claim against the individuals in their alleged "aiding and abetting," this claim is barred by the intra-corporate conspiracy doctrine, as "a municipality and its officials are considered a single entity that cannot conspire with itself."  *Tomino v. City of Bethlehem*, 2010 U.S. Dist. LEXIS 32221, *41 (E.D. Pa. march 31, 2010).

**H.    The Council Defendants Are Entitled To Qualified Immunity.**

Plaintiff claims that Defendants were or should have been apprised of their requirements for a pre-suspension hearing prior to the events at issue since the cases of *Schmidt, 639 F.3d 587,* and *Dee v. Borough of Dunmore,* 549 F.3d 225 (3d Cir. 2008) have established that an informal opportunity to be heard prior to suspension without pay was required by due process.    Plaintiff's errant reliance on *Schmidt* is misplaced and troubling, as Plaintiff's counsel represented Mr. Schmidt.   In that case, the Third  Circuit Court held that "***absent extraordinary circumstances***," an informal opportunity to be heard prior to suspension without pay was required by due process." *Schmidt,* 639 F.3d at 596.   Likewise, Plaintiff's reliance on *Dee* is inappropriate, misplaced and troubling, as Dee was also represented by Plaintiff's counsel.   In *Dee,* the Third Circuit held—as it did in *Schmidt*—that in "***extraordinary situations where some valid government interest is at stake***" it is "permissible to postpone the hearing until after the deprivation has already occurred."  *See Dee*, 549 F.3d 225, 233 (3d Cir. 2008) (citing *Bd. Of Regents v. Roth*, 408 U.S. 564, 570 n.7 (1972) (quoting *Boddie v. Conn.*, 401 U.S. 371, 379 (1971)); see also *Loudermill*, 470 U.S. at 542 n.7; *Gilbert v. Homar*, 520 U.S. 924, 930-31, 117 S. Ct. 1807, 138 L. Ed. 2d 120 (1997).  Thus, to the extent that Plaintiff

argues that he was absolutely entitled to a pre-suspension hearing, even in extraordinary circumstances as here, Plaintiff is misleading this Court.

For the foregoing reasons, it is clear that Plaintiff has failed to establish that Council Defendants violated any clearly established Constitutional right belonging to the Plaintiff.  In this case, the only claim Plaintiff makes against the Council Defendants is that they "approved of Plaintiff's unpaid suspension and ultimate termination."  Even assuming for the purposes of Defendants' Motion to Dismiss only that Council Defendants did approve Plaintiff's unpaid suspension and ultimate termination, none of the Constitutional rights in this case were so clearly defined as to preclude the qualified immunity defense.  Thus, this Court should find that Council Defendants enjoy qualified immunity from all of Plaintiff's claims.

I.     **Plaintiff's ADAAA and PHRA Claims of Discrimination Must Fail Because Public Records Show That Plaintiff Was Not a Qualified Individual Within The Meaning of the ADAAA.**

Plaintiff claims in his Response to Defendants' Motion to Dismiss that he was "qualified to work since [he] stated in his Complaint, "Dr. Jesse opined that …. [he] did not present any psychiatric issues or symptoms, which would preclude him for employment."  Dr. Jesse's alleged opinion is irrelevant here because as previously submitted to this Court, public

records make it clear that Plaintiff's weapons certification expired and he has not passed his handgun qualification test, which is required of all police officers in the Borough, which makes him unqualified to remain as a police officer. *See* Exhibit "C," previously attached to Defendants' Motion to Dismiss, at Bates Stamped No. BOROUGH 36. For the foregoing reasons, Plaintiff's claim of discrimination under both the ADAAA and the PHRA must fail.

### J. Council Defendants Cannot Be Held Liable For Punitive Damages Under Counts I, III and IV.

Plaintiff's claims for punitive damages as against Council Defendants in their individual capacities must be dismissed. Punitive damages are an extreme remedy, to be reserved for special circumstances, and are only available in the most exceptional matters. *See Keenan v. Philadelphia*, 983 F.2d 459, 470 (3d Cir. 1992) (citing *Cochetti v. Desmond*, 572 F.2d 102, 105-106 (3d Cir. 1978)). The *Cochetti* Court set out requirements for a defendant's conduct to justify punitive damages, namely, "that the defendant acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so." *Cochetti*, 572 F.2d at 106.

As previously submitted to this Court, the Third Court has held that a pre-suspension hearing was not required by due process if there existed

*extraordinary circumstances*.  See *Schmidt*, 639 F.3d at 596; see also, *Dee*, 549 F.3d at 233 (in "*extraordinary situations where some valid government interest is at stake*" it is "permissible to postpone the hearing until after the deprivation has already occurred.").  Plaintiff fails to establish the absence of "extraordinary circumstances" that would have made clear to Council Defendants that their alleged actions may have been in violation of an alleged Constitutional right belonging to the Plaintiff.  In this case, the only claim Plaintiff makes against the Council Defendants is that they "approved of Plaintiff's unpaid suspension and ultimate termination." Because Plaintiff fails to plead that the individual defendants acted with actual knowledge that they were violating a federally protected right or with reckless disregard of whether they were doing so at the time that they voted to suspend and/or terminate the Plaintiff, his claims against Council Defendants for punitive damages in Count I must necessarily fail.

Likewise, Plaintiff's claims against Council Defendants for punitive damages in Counts III and IV must also fail.  Neither the Supreme Court nor the third circuit has addressed this issue directly.  However, as stated previously, the Third Circuit has held that Congress did not intend to hold individual employees personally liable under Title VII. *Sheridan,* 100 F.3d at 1077-78 (3d Cir. 1996).  F or the reasons discussed in paragraph "E,"

because there is no individual liability under Title VII, it must follow necessarily that there is no individual liability under the ADA. Likewise, for the reasons discussed in paragraph "F," there can be no individual liability for Council Defendants under the PHRA. As such, any and all punitive claims against the Council Defendants brought under the ADA and the PHRA must also be dismissed as a matter of law.

Respectfully submitted,

DEASEY, MAHONEY, VALENTINI & NORTH, LTD.

By:   /s/May Mon Post
John P. Morgenstern, Esq./I.D. #80014
May Mon Post, Esquire/I.D. #90154
1601 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 587-9400
(215) 587-9456 – FAX
mpost@dmvnlaw.com
jpmorgenstern@dmvnlaw.com
Attorneys for Defendants

Dated: December 30, 2013

## CERTIFICATE OF SERVICE

I, May Mon Post, Esquire, hereby certify that on the date set forth below, I did cause a true and correct copy of *Defendants' Reply Brief in Support of Their Motion to Dismiss Plaintiff's Amended Complaint*, to be filed with the Court's ECF/PACER electronic filing system where it was available for immediate viewing and download by the following party:

Cynthia L. Pollick, LLM, Esquire
The Employment Law Firm
363 Laurel Street
Pittston, PA  18640
Attorney for Plaintiff

/s/May Mon Post
May Mon Post, Esquire

December 30, 2013